CALSTAR PROPERTIES, L.L.C. and Calstar, L.L.C., Appellants,

v.

CITY OF FORT WORTH and Lasalle Bank National Association (f/k/a Lasalle National Bank, N.A.) as Trustee for the Certificateholders of Commercial Mortgage Asset Trust Commercial Mortgage Pass Through Certificates Series 1999–C1, Appellees.

No. 2–03–182–CV.

Court of Appeals of Texas, Fort Worth.

June 10, 2004.

Law Offices of Nolan & Nolan and Jordin S. Nolan, Houston, for Appellants.

Akin, Gump, Strauss, Hauer & Feld, L.L.P. and Joseph F. DePumpo and Megan M. O'Laughlin, Dallas, Perdue, Brackett, Flores, Utt & Burns and Elizabeth Parmer, Fort Worth, for Appellees.

PANEL B: DAUPHINOT, GARDNER, and McCOY, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellants are Calstar, L.L.C. ("Calstar") and Calstar Properties, L.L.C. ("Calstar Properties"). Appellees are the City of Fort Worth ("Fort Worth") and LaSalle Bank National Association ("LaSalle Bank"). Appellants appeal the trial court's granting of Fort Worth's motion for summary judgment and LaSalle Bank's motion to dismiss Calstar's third-party petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Calstar and The Capital Company of America, L.L.C. (CCA) entered into a loan agreement wherein Calstar borrowed $5.6 million from CCA to purchase the Green Oaks Inn in Fort Worth, Texas. To secure the loan, Calstar executed a Leasehold Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixtures Filing ("Deed of Trust") in favor of CCA. At that time, Calstar, CCA, and LaSalle Bank also entered into a Cash Management Agreement pursuant to which LaSalle Bank was to act as the "deposit bank" in managing the accounts provided for in the loan agreement.

The terms of the loan agreement provided that CCA could assign all of its "rights, title, obligations and interests" in the loan documents. The term "loan documents" is defined in the loan agreement to include the loan agreement itself, the Deed of Trust, and the Cash Management Agreement. Any assignee, according to the loan agreement, would "thereafter stand in the place of [CCA]" with respect to the loan documents. CCA subsequently assigned the loan, Deed of Trust, and Cash Management Agreement to LaSalle Bank. The loan agreement and Cash Management Agreement contain forum selection clauses requiring actions between Calstar and CCA or its assignee to be brought in federal or state court in Los Angeles, California.

Calstar owned the Green Oaks Inn from on or around September 4, 1998 until LaSalle Bank foreclosed on the note and purchased the hotel in November 2000. Calstar Properties managed the hotel during Calstar's period of ownership. According to section 32–21.2[1] of the City of Fort Worth Code ("Fort Worth Code") and section 351.0041 of the Texas Tax Code, LaSalle Bank was required to withhold an amount of the purchase price sufficient to pay the hotel occupancy taxes due against the Green Oaks Inn. TEX. TAX CODE ANN. § 351.0041 (Vernon 2002); FORT WORTH, TEX., CODE OF ORDINANCES ch. 32, art. II, § 32–21.2 (2004) (effective Oct. 1, 1986).

On March 29, 2001, Fort Worth sued Appellants and Appellee LaSalle Bank for delinquent occupancy taxes due on the Green Oaks Inn in the amount of $222,977.31. This amount included $19,857.47 in penalties and $4,545.14 in interest. Appellants filed a cross-claim against LaSalle Bank for failure to withhold an amount sufficient to pay the hotel taxes. In response, LaSalle Bank filed a motion to dismiss, claiming that Calstar's petition violated contractual forum selection provisions in the loan agreement and Cash Management Agreement requiring all legal action between Calstar and LaSalle Bank to be brought in Los Angeles, California. The trial court granted LaSalle Bank's motion and dismissed Appellant's action against LaSalle Bank with prejudice.

Fort Worth eventually entered into a settlement agreement with LaSalle Bank and nonsuited LaSalle Bank. Under the terms of the settlement agreement, LaSalle Bank paid Fort Worth $139,000 in settlement of the tax claim. Thereafter, Fort Worth filed a motion for summary judgment as to its claim against Appellants seeking $222,977.31 plus interest. The trial court issued an order on the motion on January 14, 2003, stating in pertinent part:

> The Court having review[ed] Plaintiff's Motion for Summary Judgment and Defendant's Response to Plaintiff's Motion for Summary Judgment, and having heard argument regarding the same, is of the opinion that Plaintiff's Motion for Summary Judgment is of merit and should be GRANTED.
>
> IT IS THEREFORE, ORDERED ADJUDGED AND DECREED THAT Plaintiff's Motion for Summary Judgment is GRANTED, and that Plaintiff is hereby awarded a judgment against De-

---

1. Both parties cite to section 32–23 of the Fort Worth Code. Section 32–23, however, relates to the designation of residential reinvestment zones for tax abatement. Fort Worth's motion for summary judgment attached a copy of 32–21.2, which addresses tax collection procedures on the purchase of ho-tels. We further note that while the record contains copies of section 32–21.2, a copy of section 32–23 is not included in the summary judgment evidence. Therefore, we construe the parties' argument to relate to section 32–21.2.

fendants Calstar, LLC and Calstar Properties, LLC in the amount of $83,977.31, that amount representing the entire amount of judgment sought for $222,977.31 less an offset for $139,000 previously collected by Plaintiff from another Defendant herein.

This appeal ensued.

## II. SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

In a traditional summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *S.W. Elec. Power Co.*, 73 S.W.3d at 215; *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Rhone–Poulenc*, 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

### B. DISCUSSION

In Appellants' first issue, they contend that Fort Worth's motion for summary judgment should have been denied for three reasons. First, Appellants argue that under Fort Worth Code § 32–21.2 and Texas Tax Code § 351.0041, LaSalle Bank alone is the entity responsible for payment of the taxes sought by Fort Worth. The Fort Worth Code and Texas Tax Code are virtually identical in language. Consequently, for the purposes of this appeal, we cite and refer to section 351.0041 of the Texas Tax Code, which states in pertinent part:

(a) If a person who is liable for the payment of a tax under this chapter is the owner of a hotel and sells the hotel, the successor to the seller or the seller's assignee shall withhold an amount of the purchase price sufficient to pay the amount due until the seller provides a receipt by a person designated by the municipality to provide the receipt showing that the amount has been paid or a certificate showing that no tax is due.

TEX. TAX CODE ANN. § 351.0041; *see also* FORT WORTH, TEX., CODE OF ORDINANCES ch. 32, art. II, § 32–21.2.

Appellants argue that under the plain meaning of the tax code, no party other than the "purchaser of the hotel" owes the delinquent hotel occupancy tax. In response to Appellants' argument, Fort Worth points us to section 351.004 of the Texas Tax Code, which states in part:

(a) The municipal attorney or other attorney acting for the municipality may bring suit against a person who is required to collect the tax imposed by this chapter and pay the collections over to

the municipality and who has failed to file a tax report or pay the tax when due to collect the tax not paid or to enjoin the person from operating a hotel in the municipality until the tax is paid or the report filed, as applicable, as provided by the court's order.

. . . .

(d) The remedies provided by this section are in addition to other available remedies.

TEX. TAX CODE ANN. § 351.004(a), (d) (Vernon 2002). Fort Worth argues that the very language of section 351.004(d) indicates that the pursuit of the owner who collected the taxes in question is a remedy in addition to other available remedies and that the reasoning behind this language is apparent. According to Fort Worth, the owner of a hotel is acting as trustee for the municipality or the State when he or she collects a properly assessed hotel occupancy tax because the money collected does not belong to the owner. Rather, the hotel owner is holding the money for the benefit of the assessor. Fort Worth asserts that if an owner could simply sell the hotel to avoid liability for taxes improperly converted to personal use, the owner would realize an inequitable windfall every time he or she found a purchaser ignorant of proper sales procedures.

When construing a statute, we ascertain the Texas Legislature's intent from the plain meaning of the actual language used. *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002). Additionally, the primary rule in statutory interpretation is that a court must give effect to legislative intent, considering the language of the statute, as well as its legislative history, the objective sought, and the consequences that would flow from alternative constructions. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). To date, no court has addressed the interaction between sections 351.004

and 351.0041 of the tax code. Therefore, we look to similar statutes. *See Univ. of Tex. Med. Branch at Galveston v. Barrett*, 112 S.W.3d 815, 822 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (Anderson, J., dissenting) (en banc op. on reh'g) (stating that in construing a statute, courts may consider other statutes on the same or similar subject); *see also In re Doe*, 19 S.W.3d 249, 255 (Tex.2000).

Although not cited by either party, research reveals several sections within the tax code that contain almost identical language to 351.0041. *See e.g.* TEX. TAX CODE ANN. §§ 31.081 (relating to property tax withholding on purchase of business or inventory), 111.020 (relating to state tax collection on termination of business) (Vernon 2001), §§ 156.204 (relating to state hotel occupancy tax collection upon termination of business), 352.0041 (relating to county hotel occupancy tax collection on purchase of hotel) (Vernon 2002); *see also* TEX. LOC. GOV'T CODE ANN. § 334.114 (Vernon 1999) (relating to collection procedures on purchase of motor vehicle rental business). These sections, like 351.0041, have not been addressed by any court in relation to their interaction with other sections of the tax code.

Under the Texas Code Construction Act, even when a statute is not ambiguous on its face, we may consider administrative construction of a statute. *See* TEX. GOV'T CODE ANN. § 311.023(6) (Vernon 1998). Although research did not uncover administrative materials regarding 351.004 or 351.0041, the Texas Comptroller of Public Accounts has construed the statute addressing *state* hotel occupancy taxation. *See* TEX. TAX CODE ANN. § 156.204. As stated previously, this statute has almost identical language to section 351.0041:

(a) If a person who is liable for the payment of an amount under Section 156.151 of this code is the owner of the

hotel and sells the hotel, the successor to the seller or the seller's assignee shall withhold an amount of the purchase price sufficient to pay the amount due until the seller provides a receipt from the state comptroller showing that the amount has been paid or a certificate stating that no amount is due.

(b) The purchaser of a hotel who fails to withhold an amount of the purchase price as required by this section is liable for the amount required to be withheld to the extent of the value of the purchase price.

*Id.* § 156.204(a)-(b).

▇ In a 1989 Texas Comptroller's Decision, an administrative law judge was called upon to consider the petitioners' contention that successor liability for unpaid hotel occupancy taxes should have been assessed against the purchaser of a motel, namely the foreclosing creditor, rather than against petitioners as predecessor owners. *Taxpayer Hearing on Disputed Audit,* 1989 WL 148705, at *2, Hearing No. 24, 983 (Tex.Cptr.Pub.Acct. Nov. 12, 1989). In that case, the administrative law judge denied the petitioners contention, concluding:

While the deficiency has been denominated as a successor liability, it is in fact a primary liability owed by the Petitioners. Officers and directors do not become liable as successors when a corporation's right to do business is forfeited but as principals of an operating concern similar to partners in a partnership. Consequently, Petitioner's reliance on the provisions of the act concerning successor liability and the related hearings is misplaced.

Petitioners argued they should be relieved of liability because the business was sold. I would point out that the successor liability provision is intended to give the Comptroller the option of proceeding against the purchaser, it is not intended to relieve the predecessor of liability.

*Id.* We agree that the language of the Texas Tax Code is clear in its intent to allow the pursuit of occupancy taxes from the person(s) required to collect the hotel occupancy tax in the first place, as well as from a hotel purchaser that fails to withhold the amount of occupancy taxes due from the purchase price.

The plain meaning of section 351.004 is that suit may be brought against a person who is required to collect the tax imposed by this chapter and fails to pay the tax when it is due. TEX. TAX CODE ANN. § 351.004. Appellants, by their own admission, owned the hotel from on or around September 4, 1998 until LaSalle Bank purchased it on November 7, 2000. According to a sworn affidavit from the Deputy Treasurer for Fort Worth, the occupancy taxes due for the period from January 1999 through March 2000 were $222,977.31. Thus, under section 351.004, Fort Worth properly brought suit against Appellants for the unpaid taxes. Section 351.004(d) clearly provides that this remedy is available in addition to other remedies, such as Fort Worth's collection of taxes from LaSalle Bank under section 351.0041.

The plain meaning of section 351.0041 is that the purchaser of the hotel is liable for the occupancy taxes when it fails to withhold funds from the purchase price. Nothing in the tax code indicates that sections 351.004 and 351.0041 are mutually exclusive. We should read every word, phrase, and expression in a statute as if it were deliberately chosen, and presume the words excluded from the statute are done so purposefully. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.,* 81 S.W.3d 869, 873 (Tex.App.-Austin 2002, pet. denied); *City of Austin v. Quick,* 930 S.W.2d 678, 687 (Tex.App.-Austin 1996),

*aff'd,* 7 S.W.3d 109 (Tex.1998) (citing *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981)). Reading sections 351.004 and 351.0041 together, we presume that the legislature intentionally omitted language that would indicate that sections 351.004 and 351.0041 are mutually exclusive, and we construe the tax code to allow recovery under both sections.

We additionally find no support for the proposition that a person required to collect hotel occupancy taxes is absolved from the obligation to turn the funds over to the municipality if it sells the hotel. In addition to subsections (a) and (b), section 351.0041 provides a means for hotel purchasers to avoid liability all together under certain circumstances:

> (c) The purchaser of a hotel may request that the person designated by the municipality to provide a receipt under Subsection (a) issue a certificate stating that no tax is due or issue a statement of the amount required to be paid before a certificate may be issued. The person designated by the municipality shall issue the certificate or statement not later than the 60th day after the date that the person receives the request.
>
> (d) If the person designated by the municipality to provide a receipt under Subsection (a) fails to issue the certificate or statement within the period provided by Subsection (c), *the purchaser is released from the obligation to withhold the purchase price or pay the amount due.*

TEX. TAX CODE ANN. § 351.0041(c)-(d) (emphasis added). These subsections conflict with Appellants' blanket assertion that the purchaser of a hotel is liable for all taxes involving occupancy up to and including the time of purchase. Appellants contend their "obligation to pay any hotel occupancy taxes ... extinguished when LaSalle Bank foreclosed upon its note and 'purchased' the hotel." However, section 351.0041 only requires the purchaser of a hotel to withhold an amount of the purchase price sufficient to pay occupancy taxes "until the seller provides a receipt ... showing that the amount has been paid or a certificate showing that no tax is due." *Id.* § 351.0041(a). According to the plain language of the statute, Appellants could pay the occupancy taxes after selling the hotel, which would relieve LaSalle Bank of the duty to withhold the occupancy tax amount from the purchase amount and remove any liability for the occupancy taxes due.

Moreover, section 351.0041(b) limits the liability of a hotel purchaser who fails to withhold taxes to the amount of the purchase price. *Id.* § 351.0041(b). Appellants' proposed construction of the statute would leave municipalities without recourse beyond the purchaser's sale price. We decline to interpret the statute to lead to such an illogical result. Thus, we construe the statute as allowing recovery both from the person required to collect the occupancy tax and the purchaser of a hotel who fails to withhold the occupancy tax amount from the purchase price of the hotel.

■ Appellants' second argument relating to their contention that summary judgment was improperly granted is that Fort Worth is barred from seeking recovery under the doctrine of the election of remedies. An election of remedies is "the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same set of facts." *Custom Leasing, Inc. v. Tex. Bank & Trust Co.,* 491 S.W.2d 869, 871 (Tex.1973). The doctrine of election of remedies bars recovery when one successfully exercises an informed choice between two or more remedies, rights, or states of facts, which are so inconsistent that to

allow recovery would constitute manifest injustice. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980). Remedies are inconsistent when one of the remedies results from affirming the transaction and the other results from disaffirming the transaction. *Foley v. Parlier*, 68 S.W.3d 870, 882 (Tex.App.-Fort Worth 2002, no pet.). For example, in a fraud case, the plaintiff can either claim rescission for fraud and get his property back or he can sue for damages and affirm the transaction. *Id.* A party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a "double recovery." *Id.; see Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex.1998).

■ As previously discussed, the applicable statutes here, by their plain language and intent, create coexisting mechanisms for recovery. The court did not require Appellants and LaSalle Bank to each pay the full amount of the hotel occupancy tax delinquency. Rather, the trial court ordered Appellants to pay the delinquency minus an offset in the amount of LaSalle Bank's settlement payment. Thus, we conclude that the doctrine of election of remedies does not bar Fort Worth from collecting the remainder of the delinquent occupancy tax from Appellants.

Finally, Appellants argue that summary judgment should not have been granted because there were three genuine issues of material fact:

1. What is the remaining amount of unpaid taxes, if any, after the application of the $139,000.00 paid by La-Salle Bank to the City of Fort Worth?

2. Was the settlement by the City of Fort Worth with LaSalle Bank an election of remedies?

3. Is the recovery by the City of Fort Worth against [Appellants] in the sum of $83,977.31 a double recovery or unjust enrichment?

Appellants' first purported issue of material fact is simply a mathematical calculation. Fort Worth provided ample evidence, in the form of a sworn affidavit from the Deputy Treasurer for Fort Worth, that the total delinquency was $222,977.31 (including penalty and interest). Subtracting Fort Worth's settlement with LaSalle Bank in the amount of $139,000 leaves a remaining delinquency owed of $83,977.31. Consequently, there is no genuine issue of material fact as to the remaining amount of unpaid taxes.

■ Appellants' other purported issues of material fact involve questions that have been decided as a matter of law. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex.App.-Houston [1st Dist.] 1996, no writ) (stating "[w]hen the issue is one of no evidence or conclusive evidence, the issue is a question of law"). Whether Fort Worth's settlement with LaSalle Bank is an election of remedies or constitutes a double recovery is a question of law that we have decided in Fort Worth's favor, as previously discussed. Further, unjust enrichment is merely an element of Appellants' affirmative defense regarding the doctrine of election of remedies. *See Bocanegra*, 605 S.W.2d at 851; *Stephens v. Dallas Area Rapid Transit*, 50 S.W.3d 621, 628 (Tex.App.-Dallas 2001, pet. denied) (stating the doctrine combines elements of estoppel, ratification, and unjust enrichment). Thus, Appellants have presented no genuine issues of material fact. Having resolved all three of Appellants' arguments presented in their first issue in favor of Fort Worth, we overrule Appellants' first issue.

### III. DISMISSAL OF THIRD-PARTY PETITION

In Appellants' second issue, they contend that the trial court improperly granted LaSalle Bank's motion to dismiss the third-party petition of Appellants, in which they argued that they are entitled to recover from LaSalle Bank any and all monies obtained in the judgment by Fort Worth against Appellants in the form of indemnity, breach of contract, negligent misrepresentations, breach of fiduciary duty, and unfair business practices. According to LaSalle Bank, Appellants' petition is actually a cross-claim, which the trial court properly dismissed because it directly violated valid, enforceable contractual forum selection provisions contained in the loan agreement and Cash Management Agreement that require all legal actions between Appellants and LaSalle Bank to be brought in Los Angeles, California.

Section 10.7(b) of the loan agreement provides as follows:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN LOS ANGELES, CALIFORNIA.

Likewise, section 12 of the cash management agreement provides:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST DEPOSIT BANK, LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN LOS ANGELES, CALIFORNIA.

■ Appellants' sole argument in support of their contention that the court erred in enforcing these provisions is an unsupported assertion that section 15.020(c)(2) of the Texas Civil Practices and Remedies Code should not apply to this case. Section 15.020(c)(2) states that an action arising from a "major transaction" cannot proceed in a Texas county if "the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction." TEX. CIV. PRAC. & REM.CODE ANN. § 15.020(c)(2) (Vernon 2002). Appellants, citing no authority, reason that they are not subject to 15.020(c)(2) because they did not initiate the underlying litigation against LaSalle Bank.

Despite Appellants' characterization of their claim as a third-party action and compulsory counter-claim, we first note that Appellants' claim against LaSalle Bank is a cross-claim. Fort Worth initially sued Appellants and LaSalle Bank, causing them to be co-defendants. A third-party petition is employed when a defendant causes "a citation and petition to be served upon a person *not a party to the action* who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him." TEX.R. CIV. P. 38(a) (emphasis added). A counterclaim is a claim against an *opposing party*. TEX.R. CIV. P. 97(a)-(b) (emphasis added). A cross-claim, like Appellants' claim against LaSalle Bank, is a "claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein." TEX.R. CIV. P. 97(e).

■ Thus, the question before us is whether a cross-claim is subject to a valid, enforceable forum selection clause. Appellants cite no authority indicating that they are not the "party bringing the action" or that we should not apply the plain meaning of section 15.020. In Texas, forum selection clauses are enforceable, provided that

(1) the parties have contractually consented to submit to a particular jurisdiction, and (2) the other state recognizes the validity of such provisions. *See Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70–71 (Tex.App.-Dallas 1996, no writ); *Greenwood v. Tillamook Country Smoker, Inc.*, 857 S.W.2d 654, 656 (Tex. App.-Houston [1st Dist.] 1993, no writ). It is well settled that contractual forum selection clauses are enforced in California. *See Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 496, 131 Cal.Rptr. 374, 551 P.2d 1206 (1976) (stating forum selection clauses are valid); *Intershop Communications, AG v. Superior Court*, 104 Cal.App.4th 191, 196, 127 Cal. Rptr.2d 847 (Cal.Ct.App.2002) (stating a mandatory forum selection clause will ordinarily be given effect without any analysis of convenience). Appellants did not argue or present any authority that section 15.020(c)(2) abrogates this common law enforcement of forum selection clauses.. We conclude this issue is inadequately briefed. *See Kang v. Hyundai Corp. (U.S.A.)*, 992 S.W.2d 499, 503 (Tex.App.-Dallas 1999, no pet.); Tex.R.App. P. 38.1(h) (providing that brief must contain clear and concise argument for contentions made with appropriate citations to authorities). Failure to cite any authority constitutes a waiver of the alleged error. *Kang*, 992 S.W.2d at 503. We overrule Appellants' second issue.

## IV. CONCLUSION

Having overruled both of Appellants' issues, we affirm the trial court's judgment.